Filed 9/29/15  M.S. v. R.D. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| M.S., | |
| Plaintiff and Respondent, | G049068 |
| v. | (Super. Ct. No. 05P000379) |
| R.D., | O P I N I O N |
| Defendant and Appellant; | |
| A.S., | |
| Objector and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, James L. Waltz, Judge.  Affirmed.  Appellant's motion to receive new evidence or, in the alternative, to take judicial notice.  Denied.  Appellant's supplemental motion to receive new evidence or, in the alternative, to take judicial notice.  Denied.  Objector's motion for sanctions for frivolous appeal.  Denied.  Objector's request for judicial notice and/or to take additional evidence on appeal.  Denied.

Law Office of Ronald B. Funk, Ronald B. Funk; Arnold & Porter, Anthony J. Franze, Daniel F. Jacobson and Noah L. Browne for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

John L. Dodd & Associates, John L. Dodd, Benjamin Ekenes; and John S. Cate, Jr., for Objector and Respondent.

\*          \*          \*

## INTRODUCTION

The trial court described this "epic and toxic custody battle" as "*litigation on Steroids*." The minor daughter is now 10 and one-half years old. The mother accuses the father of sexually abusing his daughter, while the father accuses the mother of coaching her daughter to fabricate these allegations. After a trial that was delayed numerous times by the mother's revolving door of attorneys, the trial court awarded sole physical and legal custody to the father. The court found that the animosity between the parents was such that any form of coparenting was impossible, and that the father was the "more capable" parent. The mother appeals.

We affirm. The trial court's judgment was supported by substantial evidence, and awarding sole legal and physical custody to the father was in the daughter's best interests. None of evidentiary rulings or factual findings the mother challenges was made in error, and even if they had been, the mother has not established any prejudice.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

A.S. (the minor) was born in October 2004. The minor's parents, M.S. (father) and R.D. (mother), were never married. In May 2005, father filed a petition to establish paternity, and to request joint legal and physical custody of the minor. In response, mother requested sole legal and physical custody of the minor, with father to

have monitored visitation. After a hearing in July 2005, the trial court temporarily awarded mother and father joint legal custody of the minor, and awarded sole physical custody of the minor to mother, with father having visitation rights. The court appointed a child custody evaluator, pursuant to Evidence Code section 730. After that hearing, however, mother and father worked out their custody issues without court intervention.

Beginning in October 2010, however, mother and father's disagreements over custody of the minor moved back into the court arena. Over the course of the next two and one-half years, multiple reports of sexual abuse of the minor by father were made to the Orange County Social Services Agency (SSA) by mother and by mandated reporters. Many of the reports were made immediately before a court hearing. All of the abuse allegations were ultimately determined by SSA, the Child Abuse Services Team (CAST), the district attorney, or the police department to be inconclusive or unfounded.

In March 2011, the trial court appointed Dr. David J. Sheffner to conduct a custody evaluation pursuant to Evidence Code section 730. In August 2011, Dr. Sheffner submitted his 84-page report to the court, in which he recommended that mother have primary physical custody of the minor during the school year, with father having primary physical custody during the summer. Dr. Sheffner noted, "when it comes to accusations of sexual misconduct by [father] . . . , and accusations of false claims and coaching of [the minor] in this area by [mother], I do not believe the data indicates any such molestation/false claims of molestation have taken place."

While acknowledging he had not reviewed any of SSA's reports, Dr. Sheffner stated that the reports were unlikely to change his opinion. He also recommended that the minor be provided psychotherapy, which should be insulated from the legal system and from mother and father's ongoing conflict. Specifically, Dr. Sheffner recommended that the minor be treated by Dr. Elaine Clough, Ph.D. Father objected to the minor's therapy with Dr. Clough because mother was allegedly interrogating the minor about her therapy sessions and coaching the minor about what to

3

say to the therapist. After Dr. Sheffner filed his report, mother continued to visit him, with and without the minor.

Mother took the minor to see Dr. Myron R. Kanofsky, mother's gynecologist, in January 2012. Dr. Kanofsky, a mandated reporter, reported possible sexual abuse to SSA, the district attorney, the Tustin Police Department, the child abuse registry, and CAST.

The trial court conducted a pendente lite custody hearing in February 2012. After the hearing, the court found "insufficient evidence to substantiate" any claims of child abuse or child molestation. The court based this finding on (1) two CAST interviews that concluded the abuse allegations were unfounded, (2) 11 allegations of abuse that SSA had concluded were unsubstantiated, and (3) Dr. Sheffner's statement that the minor had denied any abuse. Finding it to be in the minor's best interests, the court awarded primary physical custody to father, and joint legal custody to mother and father. The court also ordered that the minor be immediately placed in therapy, and that neither mother nor father discuss allegations of molestation with the therapist.

In March 2012, the court appointed counsel for the minor. The minor's counsel supported father's request for a temporary restraining order monitoring all of mother's contacts with the minor and appointing a new visitation monitor. (The previous court-ordered monitor withdrew due to mother's harassing, threatening behavior.) The court granted father's request.

Trial on the issue of custody began in September 2012, and continued sporadically through February 2013. At the outset of trial, mother agreed, through counsel, that (1) the minor had fabricated the allegations of sexual abuse by father, (2) father had not inappropriately touched the minor, and (3) all reports of abuse were unfounded. The issues remaining for the custody trial were whether the reports of abuse were made reasonably or maliciously, and whether mother had coached the minor.

4

Mother testified at the trial that she did not believe father had touched the minor in an inappropriate way, and that the minor was not credible on that point.

Dr. Sheffner testified, consistent with his Evidence Code section 730 report to the court, that mother should have primary physical custody of the minor. He testified that the minor was an unreliable historian with regard to claims of abuse by father, and her statements to Dr. Sheffner regarding the alleged abuse were inconsistent. Dr. Sheffner further testified that there were three possible reasons for the minor's reports of abuse: (1) the abuse in fact occurred; (2) the minor was coached into making the reports; or (3) the minor was motivated by an "interpsychic mechanism" caused by the "disturbing complex conflictual family dynamics." He opined that if mother had been coaching the minor, their future contact should be monitored to protect the minor "from that nefarious influence," and that mother should be subject to judicial or therapeutic intervention, depending on whether the coaching was the result of maliciousness or an emotional or mental problem.

During trial, mother's counsel withdrew. Representing herself in propria persona, mother asked to withdraw her stipulation that no sexual abuse had occurred, on the grounds that new evidence of possible abuse had become available, and there was an active criminal investigation relating to the allegations. The trial court advised mother that if she withdrew her stipulation, all the SSA reports would be admitted into evidence for all purposes. (The court had previously admitted the SSA reports for the limited purpose of assessing mother's statements contained therein.)

Another sexual abuse report was made to SSA two days before a scheduled status conference in November 2012, and the minor was taken into protective custody. A CAST interviewer determined the minor was not credible. SSA deemed the new allegations of abuse to be unfounded, and determined no intervention or services by SSA were necessary.

5

On the day of the status conference, the visitation monitor recused her agency from further supervision of visits due to "constant turmoil" caused by mother threatening to sue the monitor or have the monitor arrested, and recording the visits without the monitor's knowledge. The monitor felt it was too dangerous to continue monitoring visits because of mother.

At the status conference, the court suspended mother's contact with the minor pending further notice. At a further status conference, new counsel appeared for mother, a new visitation monitor was appointed, and mother's parenting time was reinstated.

When trial resumed in February 2013, mother repudiated her earlier stipulation denying father's alleged sexual abuse of the minor. Mother's counsel set forth her position as follows: "She alleges that . . . the child . . . made statements to her regarding sexual abuse by the father and that she reported the statements that [the minor] made." The trial court deemed the earlier stipulation to be null and void, and admitted all the SSA reports and other documents regarding the abuse investigations for all purposes. During trial, mother's new counsel substituted out, and mother was again in propria persona.

Without objection, the trial court called Robert Munoz, a senior social worker for SSA, as an expert witness in the area of child custody investigations and child custody evaluations. Munoz testified he had reviewed the entire case file, which included four CAST interviews, the minor's removal from the home and placement in protective custody on two occasions, and 16 investigations into sexual abuse allegations between November 2010 and November 2012. Of the abuse reports, seven were determined to be unfounded, two were deemed inconclusive, and none was substantiated. Munoz testified there was no evidence conclusively showing mother had coached or influenced the minor to make the allegations, although it was his personal opinion that mother had coached the

6

minor. Munoz thought it was possible that the minor continued to verbalize abuse allegations in order to obtain more time with mother.

After trial, the court issued a tentative statement of decision, to which both mother and father filed objections. In June 2013, the court issued a final statement of decision, awarding father sole physical and legal custody of the minor. Judgment was entered in July 2013.

The following day, the minor's counsel moved to be relieved as counsel: "I believe I have reached the end of my usefulness as attorney for the minor in this matter. I am unable to obtain the cooperation of the child's parents. The only thing the parents agree on is that they want me off the case. Further, I do not believe that anyone should have to accept the amount of abuse that I receive on a daily basis from the mother . . . ." The trial court relieved counsel, and appointed a new attorney as the minor's counsel. Mother's motion for a new trial and her request for a change in custody were denied.

Mother filed a timely notice of appeal from the judgment. Father has not participated in this appeal; mother's arguments have been challenged by the minor.

DISCUSSION

I.

*THE TRIAL COURT DID NOT ERR IN CONCLUDING AN AWARD OF SOLE PHYSICAL AND LEGAL CUSTODY TO FATHER WAS IN THE MINOR'S BEST INTERESTS.*

The judgment from which mother appeals is a custody order. As such, we review the court's decision for abuse of discretion. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.) We may conclude the trial court abused its discretion only if "there is no reasonable basis on which the [trial] court could conclude its decision advanced the best interests of the child." (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 15.) We review the trial court's findings underlying its judgment for substantial evidence. "In an initial custody

determination, the trial court has 'the widest discretion to choose a parenting plan that is in the best interest of the child.' [Citation.] It must look to *all the circumstances* bearing on the best interest of the minor child." (*In re Marriage of Burgess*, *supra*, at pp. 31-32.) We do not reweigh conflicting evidence or determine whether we would have made the same findings as the trial court: "'Our function has been fully performed when we find in the record substantial evidence which supports the essential findings of the trial court.'" (*In re Marriage of Birnbaum* (1989) 211 Cal.App.3d 1508, 1513.)

The trial court's award of custody is ultimately determined by considering the best interest of the child. (Fam. Code, § 3011.) The court may consider any relevant factors in making that determination (*In re Marriage of Burgess*, *supra*, 13 Cal.4th at pp. 31-32), but it must consider the health, safety, and welfare of the child, as well as any history of abuse (Fam. Code, § 3011, subds. (a), (b)). Regarding consideration of the history of abuse, the statute provides as follows: "As a prerequisite to considering allegations of abuse, the court may require substantial independent corroboration, including, but not limited to, written reports by law enforcement agencies, child protective services or other social welfare agencies, courts, medical facilities, or other public agencies or private nonprofit organizations providing services to victims of sexual assault or domestic violence." (Fam. Code, § 3011, subd. (b).)

In its statement of decision, the trial court made the following findings with respect to the minor's best interests:[1]

"1. Historically, [the minor] is well-bonded to *both parents* and thrived under their separate care and nurturing until at least April 2011 and likely through the end of 2011 until the parents engaged in open warfare.

---

[1] We quote the trial court's statement of decision at length because it explains the court's analysis and demonstrates the care the court took in reaching its decision.

8

"a. [The minor] craves each parent's love, attention and time and under a hypothetical that today both parents are judged . . . adequate custodial parents, then the court would easily award joint custody under F[amily ]C[ode] § 3002 and apportion parenting time, affording each parent frequent and continuous contact with each parent.

"i. Under the hypothetical two adequate parents with co-parent ability, and all the circumstances the same, the court would have granted joint custody [and] ordered the mother to serve as the primary parent <u>during school time</u> with the father having parenting time alternating Thursdays to Mondays; during the summer, the court would have ordered the reverse parenting schedule, the father serving as the primary parent.

"2. HOWEVER, during the past several years plus, the parents waged a relentless battle, each parent seeking to limit the other parent's influence over [the minor] and each parent seeking to disestablish the other parent. The chaos churned up by the parental feud filled [the minor]'s life with chaos.

"3. There is no doubt—none—these two parents have no ability to co-parent. The parents are locked into an orbit of hate and retribution, not remediable by any tool, speech or lecture from this judge. The parents are so highly conflicted that no parenting schedule or set of rules and regulations will adequately address and solve their on-going conflict and power struggle over [the minor], nor can this judge construct any sort of plan that might enable co-parenting. The pattern of hostility is likely to continue no matter what this court might order or establish.

"a. Joint custody is ruled out. The best this court can do is consolidate parent decision-making to a single parent—the more capable parent ([father]), and establish a super structured parenting schedule, announce clear judicial warnings . . . , and enforce court orders . . . .

"b. Findings:

"i. The amount of parental strife and enmity between the parents disables any ability to cooperate or act collaboratively.

9

"1.  In a hypothetical moment when time-sensitive parental decision making is at hand or urgently needed (e.g. medical decision—such as authorizing or withholding medical consent or, in an educational setting, teachers and special education advisors need or require consent for [individualized education program] services), the current amount of extreme parental conflict will frustrate, stifle or prevent any necessary parental consultation and[/]or communication and the parental conflict will disrupt the administration of necessary professional services of whatever sort [whenever] offered or needed.

"2.  In a hypothetical non-emergency setting, where the parents may be called upon to make recurring or routine decisions regarding issues affecting [the minor]'s [health, welfare, and safety], the mis-trust and parental enmity will delay, frustrate or implode the decisional process, causing [the minor] to miss-out on services, activities or miss opportunities.  (e.g. extracurricular activities, selection of schools, discretionary educational or medical decision-making including deciding between medical treatment options or weighing and choosing between competing [individualized education program] services.)

"3.  In a hypothetical setting, any joint custody award will subject [the minor] to risk of hostile parental exchanges, conflicting parental decisions, conflicting parent-directed (child) activities, exposing [the minor] to high drama, parental anger and hostility, parental strife, and all this will doubtlessly (negatively) affect [the minor] emotionally, psychologically and maybe even physically.

"4.  Finally, any joint legal custody arrangement will incite and perpetuate hostile disagreements between the parents leaving the parents fewer emotional resources to benefit and assist [the minor], and otherwise expose [the minor] to adult drama, hostile exchanges and leaving [the minor] fearful.

"4.  Granting sole custody to the more capable parent serves the best interests of [the minor], and will, in any hypothetical setting (emergency or otherwise)

10

ease and facilitate and enable time sensitive decision-making, avoid confusion and avoid risk of parental conflict negatively affecting [the minor].

"a. An award of sole custody to one parent reduces the risk [the minor] will be exposed to counterproductive parenting behavior, adult anger and hostility.

"5. Awarding sole custody to [father] is in the best interest of the child:

"a. When comparing the parents, only [father is] currently qualified to serve in the role of custodial parent.

"i. [Father] is characterized as an adequate parent.

"1. The child is well-bonded to [father] and [father] is capable of providing [the minor] with a stable and nurturing home environment, and provides all [health, welfare, and safety] and emotional needs.

"2. The child is safe while under [father]'s custodial care.

"a. The father has never physically abused his daughter and the mother's allegations to the contrary are not supported by any evidence. The child's claims of past abuse are false. [¶] . . . [¶]

"6. [Mother] is not qualified to serve in the role of custodial parent[.] [¶] . . . [¶]

"7. If allowed to serve as custodial parent, it is more likely than not [mother] will impede, block, frustrate and dis-able the father's frequent and continuous contact with his child.

"a. If left un-checked, it is more likely than not the mother will condition the child to make additional false reports and[/]or to teach the child not to trust the father.

"b. If left un-checked, the mother will attempt to align the child in her favor and against the father.

"8. [Mother]'s current life and circumstances are in chaos, not suitable for the child and the child should not be exposed to more chaos. [¶] . . . [¶]

11

"9.  The court has a substantial concern regarding [mother]'s emotional[] state and stability, characterized as fragile and unstable."

The trial court's findings are supported by substantial evidence. Dr. Sheffner's report and testimony, and the number of reports of sexual abuse made by the minor, none of which was substantiated, provided ample support for the court's findings regarding the minor's mental and emotional issues.  The testimony of mother and father, as well as the court's familiarity with the contentiousness of the litigation between them, amply supported the findings regarding their inability to coparent, the need to give sole custody to one parent, and mother's inability to provide a stable home life for the minor.  The trial court did not abuse its discretion in concluding that awarding sole legal and physical custody to father was in the minor's best interest.

## II.

*THE TRIAL COURT DID NOT ERR IN EXCLUDING THE TESTIMONY OF TWO MANDATED REPORTERS REGARDING ALLEGATIONS OF SEXUAL ABUSE.*

Mother argues that the trial court erred by excluding the testimony of Dr. Thea Reinhart, the minor's court-appointed psychologist, and Dr. Kanofsky, the gynecologist who examined the minor.  We review a trial court's ruling concerning the admissibility of evidence for abuse of discretion.  (*Gordon v. Nissan Motor Co., Ltd.* (2009) 170 Cal.App.4th 1103, 1111.)

The minor initially argues that the trial court could not have abused its discretion in excluding the testimony of these witnesses because alleged sexual abuse was not an issue at trial.  (See *Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316 [party cannot adopt a new theory of the case on appeal; to do so would be unfair to the trial court and manifestly unfair to the opposing party]; *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 29 [same].)  At the beginning of trial, mother stipulated that father had not sexually abused or inappropriately touched the minor, and

12

testified she did not believe father had inappropriately touched the minor. As the trial continued, however, mother withdrew from that stipulation, and testified she did not know whether father had sexually abused the minor. Because the issue of possible sexual abuse was raised by mother during trial, it is appropriate for us to consider on appeal the claimed exclusion of the testimony of Drs. Reinhart and Kanofsky on that issue.

A. *Dr. Reinhart*

The minor argues mother has failed to establish that she attempted to call Dr. Reinhart as a witness. While mother's subpoena to Dr. Reinhart is not in the appellate record, we find significant support in the record for mother's contention that she properly sought Dr. Reinhart's testimony at trial, but that the minor's counsel's assertion of the psychotherapist-patient privilege, as well as the parties' pretrial agreements and understandings regarding Dr. Reinhart's role in the proceedings, barred her testimony.

The minor's counsel repeatedly asserted the psychotherapist-patient privilege in the trial court. Mother argues on appeal that there was no privilege to assert, citing Evidence Code section 1027, which reads: "There is no [psychotherapist-patient] privilege . . . if all of the following circumstances exist: [¶] (a) The patient is a child under the age of 16. [¶] (b) The psychotherapist has reasonable cause to believe that the patient has been the victim of a crime and that disclosure of the communication is in the best interest of the child." Mother fails to establish that she ever raised the applicability of section 1027 in the trial court, thereby forfeiting the issue on appeal.

In pleadings filed *after* the trial, mother raised the issue of Evidence Code section 1027. Mother's posttrial filings requested that the court explain in its statement of decision "[w]hat factual or legal basis the Court had for allowing [the minor's counsel] to assert the privilege on behalf of the minor child . . . and not allow Dr. [Reinhart], the child's court appointed therapist to testify when it was apparent and could be inferred that Dr. [Reinhart] was the mandatory reporter who reported and subsequently the Tustin Police Department took [the minor] into protective custody on November 7, 201[2].

13

Evidence Code 1027 is applicable and there is no privilege." If this was the alleged purpose for seeking Dr. Reinhart's testimony, the testimony was irrelevant. There was ample testimony at trial that the November 2012 abuse report, no matter who made it, was fully investigated and determined to be unfounded, and the CAST interviewer found the minor not to be credible with respect to that report.

Evidence Code section 1027 is inapplicable for another reason. In connection with a separate, later legal proceeding regarding a guardianship of the minor, Dr. Reinhart submitted a declaration in which she stated, "I do believe that my communications with [the minor] fall under Evidence Code section 1027, and I do believe she has been a victim of a crime, and that it is in her best interests for me to testify pursuant to the subpoena." However, there is nothing in the appellate record that establishes Dr. Reinhart had any belief that section 1027 applied *at the time she might have testified at the child custody trial*.[2]

The minor's argument is well taken that the purpose of appointing Dr. Reinhart as the minor's therapist in the first place was to provide her with an opportunity to obtain therapy insulated from the litigation between her parents. Dr. Sheffner recommended in his report that "neither parent attempt in any manner to interfere with, obstruct, or sabotage such treatment" or the confidentiality of the

---

[2] Mother's opening appellate brief asserts father conceded that Dr. Reinhart believed father had molested the minor as of the time of trial. Mother's citation is to father's declaration in support of a request to remove Dr. Reinhart as the minor's therapist. Father's declaration reads, in relevant part, as follows: "The trial is over. Clearly Dr. Reinhart does NOT agree with the ruling and instead believes that I molested [the minor], hence, she reported me to SSA in November 2012 per [mother]'s sworn statements to this Court." We disagree that father's declaration concedes what Dr. Reinhart believed at the time of trial, but rather summarizes what mother says Dr. Reinhart believed at the time of trial. Father's declaration also notes that Dr. Reinhart had "secret therapy appointments" with the minor during the minor's visitation with mother, during a period in which Dr. Reinhart was not in communication with the minor's counsel.

14

treatment. Dr. Sheffner testified at trial that the minor needed "regular intensive therapy with a skilled experienced psychologist; that is . . . insulated from the legal system and her parent's conflict." Mother agreed with Dr. Sheffner's recommendations. In February 2012, the court ordered that the minor be placed in therapy, and that neither mother nor father could "discuss allegations of molest[ation] with the therapist."

The trial court did not abuse its discretion in excluding Dr. Reinhart from testifying at the child custody trial.

B. *Dr. Kanofsky*

The minor argues that mother cannot challenge the trial court's exclusion of Dr. Kanofsky's testimony because mother did not call Dr. Kanofsky to testify at trial. Dr. Kanofsky was not listed on mother's witness list. Mother claims that calling Dr. Kanofsky at the child custody trial would have been a futile act because at the temporary custody hearing in February 2012, a different judicial officer ordered mother's counsel not to ask Dr. Kanofsky "any questions relating to medical treatment of this child." We need not consider whether mother can use the futility rule to escape her failure to call Dr. Kanofsky to testify at trial because her substantive arguments regarding the alleged exclusion of his testimony fail.

First, mother argues that the trial court erred because the minor's physician-patient privilege could be waived by either mother or father since, at that time, they shared joint custody of the minor. Mother cites Family Code section 3083, which provides: "In making an order of joint legal custody, the court shall specify the circumstances under which the consent of both parents is required to be obtained in order to exercise legal control of the child and the consequences of the failure to obtain mutual consent. In all other circumstances, either parent acting alone may exercise legal control of the child. An order of joint legal custody shall not be construed to permit an action that is inconsistent with the physical custody order unless the action is expressly authorized by the court." Under section 3083, one parent's consent is generally sufficient

15

to waive a child's privilege.  (*People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 744.)  But mother did not raise Family Code section 3083 in the trial court.

Second, mother argues that Penal Code section 11171.2, subdivision (b) made the testimony of Dr. Kanofsky and Dr. Reinhart nonprivileged.  Section 11171.2, subdivision (b) provides:  "Neither the physician-patient privilege nor the psychotherapist-patient privilege applies to information reported pursuant to this article in any court proceeding or administrative hearing."  Mother never raised section 11171.2, subdivision (b) at the hearing for temporary custody, or at the child custody trial.  That statute is referenced in a letter from Dr. Kanofsky, which was attached to a request by mother to the supervising judge of the family law panel, requesting that Commissioner Renee Wilson be removed from the case.

The trial court did not err in "excluding" Dr. Kanofsky's testimony.

C.  *Prejudice*

The trial court did not abuse its discretion in excluding the testimony of Dr. Reinhart or Dr. Kanofsky.  Even if the exclusion of their testimony was in error, no prejudice can be shown.  Both Dr. Kanofsky and Dr. Reinhart are mandated reporters of child abuse, and the appellate record reflects that both did make reports of alleged sexual abuse of the minor.  Those reports, as well as the investigations arising out of them and the conclusions drawn from them, are included in the SSA reports admitted in evidence. Mother fails to explain how having these reporters testify about what they reported would have impacted the trial court's judgment.

III.

*DID THE TRIAL COURT APPLY AN INCORRECT LEGAL STANDARD REGARDING COACHING?*

The trial court found by a preponderance of the evidence that mother coached the minor to allege father had sexually abused her.  Mother argues that the trial court erred and should have considered whether there was substantial evidence of

16

coaching, which mother asserts is a higher burden of proof, citing Family Code section 3027.5. That statute provides, in relevant part: "The court may order supervised visitation or limit a parent's custody or visitation if the court finds *substantial evidence* that the parent, with the intent to interfere with the other parent's lawful contact with the child, made a report of child sexual abuse, during a child custody proceeding or at any other time, that he or she knew was false at the time it was made." (Fam. Code, § 3027.5, subd. (b), italics added.)

When no other burden of proof is specified, preponderance of the evidence is used. "Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." (Evid. Code, § 115.) We conclude the use of the phrase "substantial evidence" in Family Code section 3027.5, subdivision (b) was not intended by the Legislature to apply to anything other than the preponderance of the evidence burden of proof.

The Legislature has never before used the phrase "substantial evidence" as a distinct, heightened burden of proof. Rather, the phrase is used when a preliminary finding must be made before proof by a preponderance of the evidence may be required,[3] or when a court is charged with reviewing an agency's decision. Even if we were to agree with mother that the Legislature intended to apply a different standard of proof, we

---

[3] For example, Welfare and Institutions Code section 709, which addresses determination of a minor's competency during juvenile proceedings, references substantial evidence as a lesser burden of proof than preponderance of the evidence: "During the pendency of any juvenile proceeding, the minor's counsel or the court may express a doubt as to the minor's competency. . . . If the court finds substantial evidence raises a doubt as to the minor's competency, the proceedings shall be suspended. [¶] . . . Upon suspension of proceedings, the court shall order that the question of the minor's competence be determined at a hearing. . . . [¶] . . . If the minor is found to be incompetent by a preponderance of the evidence, all proceedings shall remain suspended . . . ." (Welf. & Inst. Code, § 709, subds. (a), (b), (c).)

17

would conclude that standard was the same as, or lower than, the preponderance of the evidence standard. [4]

The legislative history of Family Code section 3027.5 does not support an inference that the Legislature intended to create a new, heightened burden of proof by using the phrase "substantial evidence."[5] The purpose behind the enactment of the statute was to address the discredited, junk-science theory known as parental alienation syndrome, which posited that almost all allegations of child sexual abuse are false. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 792 (1999-2000 Reg. Sess.) as amended July 12, 1999, p. 4.) Section 3027.5 was intended to "curtail[] judicial discretion to limit a parent's custody or visitation when an allegation of sexual abuse is made against the other parent," and to "prohibit[] any limitation on a parent's custody or visitation for the sole reason that the parent lawfully reported or investigated allegations of child sexual abuse." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 792, *supra*, as amended July 12, 1999, p. 4.) Mother fails to explain why a heightened standard of proof would be required to curtail judicial discretion in this way.

IV.

*SUBSTANTIAL EVIDENCE SUPPORTS THE FINDING THAT MOTHER COACHED THE MINOR.*

The trial court's statement of decision includes the following findings regarding mother's coaching of the minor as to allegations of sexual abuse:

"5. . . . [¶] . . . [¶] a. The father has never physically abused his daughter and the mother's allegations to the contrary are not supported by any evidence. The child's claims of past abuse are false. [¶] . . . [¶]

---

[4] Preponderance of the evidence is defined as "more likely to be true than not true." (CACI No. 200.) Substantial evidence is evidence, "contradicted or uncontradicted, which will support the determination." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 874.)

[5] Mother cited to Family Code section 3027.5's legislative history in her opening appellate brief, but did not request that this court take judicial notice of it. The minor did not object to our consideration of the statute's legislative history.

18

"c. On the basis of Dr. Sheffner's opinions and the many CPS negative findings and reports received into evidence, the court characterizes [the minor]'s claims of abuse . . . false. Multiple child custody evaluators have examined the allegations and they all agree that [the minor] is not a credible reporter regarding any abuse.

"d. The court finds by a preponderance of evidence that [the minor] was manipulated and coached by her mother into verbalizing phony accounts of abuse. [¶] i. There is no credible evidence or inference to . . . support a contrary finding. [¶] ii. It is more likely than not the mother . . . influenced, coach[ed] and encouraged [the minor] to make false reports, doing so to gain an unwarranted advantage during the custody proceedings.

"6. . . . [¶] a. [Mother] undertook a relentless campaign to destroy [father]'s father-daughter relationship and parenting time with [the minor], by coaching the child into verbalizing phony sexual abuse stories and then, orchestrating a disclosure opportunity to mandatory reporter[s], triggering serial child abuse reports, CPS investigations and CAST interviews, all negative for any abuse. Along the way, [mother] schemed to plausibly deny responsibility for [the minor]'s reporting. [Mother] set up her child to falsely report abuse. [¶] i. [Mother]'s scheme triggered 16 reports of abuse, seven separate investigations, four CAST interviews and two times [the minor] was removed from the father's custody and temporarily placed in Orangewood until child protection investigators could investigate. [¶] ii. After each and every investigation, child abuse experts concluded [the minor] was not a credible reporter, the reports of abuse were false, and along the way, police and child custody invest[igat]ors concluded that [mother] provided false or materially mis-leading information.

"b. Whenever [mother] denied coaching the child, [mother] was not credible.

"c. Whenever [mother] claimed she acted in good faith upon the child verbalizing abuse claims, [mother] was not credible.

19

"d.  While Dr. Sheffner did not find sufficient data or evidence to support any finding the mother coached the child, his data collection ended mid-2011.  At the time, little coaching had taken place.

"e.  During the trial, the court received a lot more information, not available to Dr. Sheffner.  Based on the conclusions of the many CPS investigations and social workers searching for any abuse, and the testimony from Detective Breeze that was incorporated into the trial record without objection, the overwhelming conclusion is this: [Mother] coached her child into making false reports of abuse."  (Fourth ellipses in original, fn. omitted.)

The court's findings were supported by substantial evidence.  SSA, the police, and the CAST interviewers all concluded the minor's reports were unsubstantiated, and/or that the minor was not credible.  Many of the reports were made immediately before key hearings or transfers of custody.  Mother's behavior toward others, including, but not limited to, visitation monitors and school personnel, was supportive of an inference that mother would do or say anything necessary to further her own position.

On appeal, mother argues there was substantial evidence that could support a contrary finding.  The existence of such evidence does not negate the existence of the substantial evidence supporting the trial court's findings.  "We emphasize that the test is *not* the presence or absence of a substantial conflict in the evidence.  Rather, it is simply whether there is substantial evidence in favor of the respondent.  If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld.  As a general rule, therefore, we will look only at the evidence and reasonable inferences supporting the successful party, and disregard the contrary showing.  [Citations.]  In short, even if the judgment of the trial court is against the weight of the evidence, we are bound to uphold it so long as the record is free from prejudicial error and the judgment is supported by evidence which

20

is 'substantial,' that is, of '"ponderable legal significance,"' '"reasonable in nature, credible, and of solid value . . . ."' [Citations.]" (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)

Mother argues the trial court improperly qualified Munoz as an expert witness, and erred by relying on Munoz's testimony to support the court's finding that mother coached the minor to make the reports of sexual abuse. Mother also argues the trial court erred by qualifying Munoz as "an expert in the area of child custody investigations and as a child custody evaluator." Mother did not object to Munoz's qualifications or testimony as an expert; she has forfeited any such argument on appeal. (*People v. Panah* (2005) 35 Cal.4th 395, 478; *In re Joy M.* (2002) 99 Cal.App.4th 11, 19.)

Mother argues that Munoz should not have been qualified as a child custody evaluator because he did not meet the criteria set forth in Family Code section 3110.5 and California Rules of Court, rule 5.225. But Munoz was not appointed by the court to conduct a child custody evaluation, but rather to opine on and summarize the reports and investigations performed by others. We find no error under Family Code section 3110.5 or California Rules of Court, rule 5.225. Munoz's testimony was unnecessary to support the court's findings. Therefore, even if the trial court erred by considering Munoz's testimony, there was no prejudice.

V.

*THE TRIAL COURT DID NOT ERR BY FAILING TO ALLOW DR. SHEFFNER TO INVESTIGATE THE CHILD SEXUAL ABUSE REPORTS, OR BY DISCOUNTING HIS EXPERT OPINION.*

Mother argues the trial court erred by failing to allow Dr. Sheffner to investigate the reports of child sexual abuse, and by failing to give enough weight to Dr. Sheffner's opinion.

21

Dr. Sheffner was appointed as a court expert pursuant to Evidence Code section 730,[6] not Family Code sections 3111 or 3118,[7] despite the fact that allegations of sexual abuse had already been raised in the case at the time of the appointment. At no later time did mother, father, or the minor ask that the statutory authority for Dr. Sheffner's evaluation be expanded.

Dr. Sheffner was permitted to review the relevant SSA and police reports made before he filed his report with the court. Because Dr. Sheffner's assignment was completed at that point, there was no error in the court's apparent failure to provide additional reports to him. The trial court specifically denied a request that Dr. Sheffner be ordered to supplement his report and recommendations.

Mother impliedly contends that Dr. Sheffner's role should have been shifted to that of a child custody evaluator under Family Code section 3118 because there were serious allegations of child sexual abuse in the case. At the time Dr. Sheffner testified, however, mother had stipulated that no sexual abuse had occurred and had testified she did not believe father had acted inappropriately. Only after Dr. Sheffner's testimony was completed did mother withdraw from her stipulation. And, as noted *ante*, all allegations of sexual abuse were thoroughly investigated by SSA, CAST members, and the police department, and were all concluded to be unfounded or unsubstantiated.

---

[6] "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required." (Evid. Code, § 730.)

[7] The Judicial Council of California form for the order appointing Dr. Sheffner as a child custody evaluator allowed the court to indicate the order was made "under the statutory authority of" Family Code section 3111, Family Code section 3118, Evidence Code section 730, or Code of Civil Procedure, chapter 15 of title 4 of part 4. The trial court checked only the box for Evidence Code section 730.

22

As for mother's contention that the trial court improperly discounted Dr. Sheffner's opinion, "the trier of fact is exclusive judge of the weight to be given to expert testimony." (*Ventura County Flood Control Dist. v. Security First Nat. Bank* (1971) 15 Cal.App.3d 996, 1003; see *City of Gilroy v. Filice* (1963) 221 Cal.App.2d 259, 268.)

## VI.

### *THE TRIAL COURT DID NOT ERR IN ADMITTING SSA'S REPORTS.*

Mother contends that the trial court erred in admitting SSA's reports in evidence. (All of the child abuse reports and information related to the investigations of those reports between November 2010 and August 2012 are included in trial exhibit No. 303. A confidential summary of those reports and investigations, prepared by Munoz, was admitted as trial exhibit No. 301.) The only issue we are considering on appeal is whether mother's statements contained within the SSA reports were improperly admitted hearsay. At the time the court order admitting the evidence mother challenges was made, the only issue was whether mother had coached the minor to make false accusations of sexual abuse. Later, when mother withdrew her stipulation that father had not inappropriately touched the minor, the court revised its ruling and admitted the SSA reports for all purposes. Mother's only objection was the same hearsay objection she had raised when the exhibit was admitted for a limited purpose.

Mother's challenge on appeal is to the admission of trial exhibit No. 303. Mother's argument has three parts: (1) the hearsay exception under which the court admitted the SSA reports was not applicable in this case; (2) mother had a constitutional right to question the social workers who had prepared the reports and her request to do so was denied; and (3) the reports did not contain any evidence of coaching.

The trial court's order admitting the SSA reports for a limited purpose reads: "The mother's extra-judicial statements reported within [SSA] reports (trial

23

exhibit 303) related to allegations of child abuse are relevant and not made inadmissible based on Hearsay. Trial exhibit 303 is admitted into evidence. [¶] Reasons: [¶] 1. Generally, the admissibility of [SSA] reports is authorized under F[amily ]C[ode] § 3011 whenever considering the [health, welfare, and safety] of any child and investigating any history of abuse and by inference, the false reporting of child abuse for the purpose of gaining an advantage in a custody proceeding. See also generally . . . (*Cindy L.*, (1997) 17 Cal.4th 15, 35; *In re Carmen O.* (1994) 28 Cal.App.4th 908, 921— both cases commenting on the child dependency hearsay exception). [¶] a. See also generally the judicially created exception to dependency hearings (see Welf. & Inst. Code, § 281, 300).[8] [¶] i. It seems reasonable to apply the same hearsay exceptions to child custody or visitation proceedings in a family law proceeding. [¶] 2. In addition, the [SSA] reporting process seems highly reliable. For instance, the reporters and investigators are without bias—without any motive to falsely report facts or circumstances, and further, they are presumptively acting within their duties to investigate and report . . . they are presumptively highly skilled social workers and child abuse investigators, carefully trained to investigate and record and report facts and circumstances related to child abuse claims. The time, content/detail and circumstances of the mother's statements . . . as carefully reported by [SSA] staff, provide sufficient indicia of reliability overcoming any concerns related to hearsay. [¶] 3. Finally, and most importantly, unlike the cases cited above, where the declarant is a child (or some other un-available declarant), here, the relevant statements come from a party; the mother is obviously present in court, represented by competent counsel, and able to testify to refute or explain any statement attributed to her within trial exhibit 303. There is no *Crawford*

---

[8] "There is no reason to believe the legal basis allowing [SSA] reports within a dependency proceeding[] is limited to that setting, but instead, the admissibility is very broad, and may involve any matter related to custody, status, or welfare of a minor. See *In re Malinda S.* (1990) 51 Cal.3d 368, 378-379."

[*v.*] *Washington* risk as the mother will have a meaningful opportunity to controvert her own statements and if she chooses, subpoena the social workers and cross-examine the reporters about the content of any statement attributed to the mother." (Ellipses in original, some italics added, boldface & underscoring omitted.)

Family Code section 3011 provides, in relevant part: "In making a determination of the best interest of the child in a proceeding [to determine physical or legal custody or visitation in an action pursuant to the Uniform Parentage Act (Fam. Code, § 7600 et seq.)],[9] the court shall, among any other factors it finds relevant, consider all of the following: [¶] (a) The health, safety, and welfare of the child. [¶] (b) Any history of abuse by one parent or any other person seeking custody against any of the following: [¶] (1) Any child to whom he or she is related by blood or affinity or with whom he or she has had a caretaking relationship, no matter how temporary. [¶] (2) The other parent. [¶] (3) A parent, current spouse, or cohabitant, of the parent or person seeking custody, or a person with whom the parent or person seeking custody has a dating or engagement relationship. [¶] As a prerequisite to considering allegations of abuse, the court may require substantial independent corroboration, including, but not limited to, written reports by law enforcement agencies, child protective services or other social welfare agencies, courts, medical facilities, or other public agencies or private nonprofit organizations providing services to victims of sexual assault or domestic violence. As used in this subdivision, 'abuse against a child' means 'child abuse' as defined in Section 11165.6 of the Penal Code and abuse against any of the other persons described in paragraph (2) or (3) means 'abuse' as defined in Section 6203 of this code. [¶] (c) The nature and amount of contact with both parents, except as provided in Section 3046."

---

[9] The original petition filed by father in this case was a petition to establish paternity under the Uniform Parentage Act.

25

Mother's statements within trial exhibit No. 303 were not admitted for their truth (i.e., to prove the sexual abuse occurred) but to establish mother coached the minor into making the statements, which were then determined to be unfounded or unsupported. Therefore, the statements, although made out of court, were not hearsay. (Evid. Code, § 1200, subd. (a).) Mother's statements would also be subject to the party admission exception to the hearsay rule. (Evid. Code, § 1220.) Although the trial court did not make its ruling based on these analyses of the hearsay rule, one of the basic principles of appellate review is that we consider the trial court's result, not its reasoning. (*Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 843.)

Mother argues the trial court prevented her from cross-examining the social workers who had prepared the reports contained in trial exhibit No. 303. Mother cites the following exchange with the trial court, which took place during mother's in propria persona questioning of father:

"[Mother]: Your Honor, I have questions out of [trial exhibit No.] 303 and I have never read the document, I've only been given it for about ten minutes.

"The Court: Ma'am.

"[Mother]: So I have questions for him, but I need to look over the document.

"The Court: Then skip those questions. You can do so over a break. [¶] Ma'am, you've had too many attorneys to count, and you have had access [to] those records through your attorneys. I have no patience for any delay; I've made that very clear by my conduct today and by my tone. I maintain a lack of patience. We are going to move this case forward. [¶] Let me advise you so you're not surprised. You have today until noon and all day tomorrow to complete this case. [¶] Are you clear on that?

"[Mother]: Your Honor—

"The Court: Are you clear on [that]?

"[Mother]: Yes, Your Honor. I object to that.

26

"The Court: Your objection is noted and overruled.

"[Mother]: Okay.

"The Court: Move on.

"[Mother]: Well, I have a question before I move on to him. [¶] You put [trial exhibit No.] 303 into evidence, so I have a right to question the social workers or other people who are making statements in 303. I don't even know who those individuals are, because I've never been given access to 303.

"The Court: Do you have another question?

"[Mother]: Yes, I do.

"The Court: Then ask it."

Mother is correct in asserting that she had a right to call as witnesses the social workers, police officers, or other investigators whose reports appear in trial exhibit No. 303. The court was not required to stop the trial again to allow mother to subpoena any such witnesses, however. The failure by mother or her previously retained counsel to subpoena necessary witnesses in a timely manner was not a denial of due process by the court. And the court did not refuse to allow mother to call any witness who was present and prepared to testify. Even in *In re Malinda S.* (1990) 51 Cal.3d 368, 383-384, cited by mother in support of her argument, the California Supreme Court held that the ability to subpoena witnesses, despite the shortened timeframes of a dependency hearing, satisfies a parent's right to due process.[10]

_____

[10] The quoted exchange between mother and the trial court occurred at the end of February 2013. The court had admitted trial exhibit No. 303 for a limited purpose in October 2012, and had also advised mother at that time that if she withdrew her stipulation regarding father's lack of alleged molestation of the minor, the court would admit the exhibit for all purposes. In November 2012, after mother retained new counsel midway through trial, the trial court granted a continuance until February 2013. Nothing in the appellate record indicates that mother, in propria persona or through counsel, ever subpoenaed any social workers or others whose reports or analyses appear in trial exhibit No. 303.

27

Whether the reports contained in trial exhibit No. 303 provided evidence of coaching by mother is subsumed by our analysis, *ante*, of the substantial evidence supporting the court's judgment.

The trial court did not err in admitting trial exhibit No. 303, and did not prohibit mother from subpoenaing as witnesses any authors of the reports contained within that exhibit.


VII.

*THE PROCEEDINGS WERE NOT PREJUDICED BY AN UNDISCLOSED CONFLICT OF INTEREST.*

Finally, mother argues that a previous professional relationship between father's counsel and the minor's counsel prejudiced the proceedings. In support of a motion to continue the trial and to recuse the minor's counsel, mother attached an unauthenticated copy of a page apparently printed from a court Web site, which indicates that father's counsel had represented the minor's counsel in a traffic court matter in early 2011. Based solely on this single page, mother posits that the minor's counsel was not independent, but rather was beholden to father's counsel.

Assuming that father's counsel represented the minor's counsel in a legal matter, and without deciding whether the previous professional relationship between father's counsel and the minor's counsel should have been disclosed when the minor's counsel was appointed by the trial court, we conclude no prejudice occurred. Mother's contention is that the minor's counsel took various positions and made recommendations at trial, all of which "inured to Father's benefit and Mother's detriment." Having reviewed the entirety of the trial court record, both before and after the minor's counsel was appointed, we find no support for mother's theory. While it is true that the minor's counsel invoked the psychotherapist-patient privilege to preclude Dr. Reinhart from testifying at the child custody hearing, that was consistent with Dr. Sheffner's original recommendation that the minor's therapist should be insulated from the litigation. The

28

minor's counsel advocated for more consistent therapy, criticizing father for failing to ensure the minor attended all of her scheduled sessions. The minor's counsel also insisted that mother and the minor continue to have visitation while father's counsel was urging that all contact between them be curtailed.

Further, when the minor's counsel asked to be relieved by the court, he stated that he could not get cooperation from either parent, and that both mother and father wanted him off the case.

We note that, contrary to mother's contention, father's counsel did not request that Harold LaFlamme be appointed as the minor's counsel. When mother's counsel requested that counsel be appointed for the minor, father's counsel, while arguing against any appointment, contended that if an appointment was made, the attorney should be someone "like Harold LaFlamme's office," which could deal with the plethora of investigators and SSA social workers, and which would not be overwhelmed by the complexity and contentiousness of the case.

## VIII.

### *MOTIONS ON APPEAL*

#### A.

*Mother's Motion and Supplemental Motion to Receive New Evidence (Code Civ. Proc., § 909), or to Take Judicial Notice (Evid. Code, § 452, subd. (h))*

At trial, Munoz testified that he had received a bachelor's degree from California State University, Fullerton (CSUF), and a master's degree from the University of Southern California (USC). After trial, mother served subpoenas duces tecum on the custodians of records of USC and CSUF, seeking all records from those schools relating to Robert Matthew Munoz. The custodians of records from both schools submitted declarations attesting that no responsive documents were located.

29

Mother filed a motion and a supplemental motion to receive the declarations as new evidence or to take judicial notice of them. Mother argues that because the trial court relied heavily on Munoz's testimony that mother coached the minor to make allegations of sexual abuse, and because his testimony should now be ignored given the question of his credentials and his veracity, the judgment should be reversed and sole physical and legal custody awarded to mother.

"In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make factual determinations contrary to or in addition to those made by the trial court. The factual determinations may be based on the evidence adduced before the trial court either with or without the taking of evidence by the reviewing court. The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require. This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues." (Code Civ. Proc., § 909.)

As explained *ante*, the trial court's finding that awarding sole legal and physical custody to father would be in the minor's best interests was based on the evidence that mother and father's contentious relationship precluded any type of coparenting, and on the evidence that father would be a more capable parent than mother. Even if this court took additional evidence on appeal of the declarations of the custodians of records, their consideration would not allow the case to be disposed of by a single appeal without further proceedings, and the interests of justice do not require a new trial. Therefore, we do not exercise our discretion to take additional evidence on appeal.

30

In any event, the declarations of the custodians of records of USC and CSUF are not properly matters for judicial notice under Evidence Code section 452, subdivision (h). These declarations cannot be said to be "not reasonably subject to dispute," nor are they "capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (Evid. Code, § 452, subd. (h).) Indeed, the USC custodians' declarations provide, "it is understood that such records could exist under another spelling, name or classification, but that with the information furnished to our office, and to the best of our knowledge, no such records exist in our files." Furthermore, the lack of records is not conclusive proof that Munoz did not attend those universities, and that his testimony was therefore untruthful. At this point, all we can say definitively is the two universities in question could not locate the requested documents.

We deny mother's motion to receive new evidence or, in the alternative, to take judicial notice and mother's supplemental motion to receive new evidence or, in the alternative, to take judicial notice.

B.

*The Minor's Motion for Sanctions*

The minor has brought a motion under California Rules of Court, rule 8.276(a)(1) for an order imposing sanctions against mother and her counsel for pursuing a frivolous appeal. The minor requests sanctions in the amount of $37,157.86 for attorney fees and costs incurred in preparing the minor's appellate brief and the motion for sanctions. The minor also requests that mother and her counsel be ordered to pay sanctions to the clerk of this court to compensate the state for the cost of processing the appeal. Mother filed opposition to the motion for sanctions.

Code of Civil Procedure section 907 provides: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." The Court of Appeal may impose

31

sanctions on a party or attorney for "[t]aking a frivolous appeal or appealing solely to cause delay." (Cal. Rules of Court, rule 8.276(a)(1).) Mother's appeal was not filed solely to cause delay. To the contrary, mother's goal is to obtain custody of the minor, a goal that is inconsistent with delaying the proceedings.

An appeal is frivolous when (1) "it is prosecuted for an improper motive— to harass the respondent or delay the effect of an adverse judgment" or (2) "it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) The first standard—improper motive—is tested subjectively, while the second standard—indisputably without merit—is tested objectively. (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 516.)

The minor fails to point to any evidence supporting a claim that mother's appeal was pursued for an improper motive. There is no evidence that mother's appeal caused any harassment of father, who did not file an appellate brief.

The minor identified the following as evidence that the appeal is objectively without merit: (1) mother argued for application of an erroneous standard of review, (2) mother failed to present the case in the light most favorable to father, (3) mother misrepresented key portions of the record, (4) mother relied on facts outside the record, which occurred after the judgment, and (5) none of the issues raised by mother's appeal "is remotely arguable." While these may constitute a failure to comply with the appellate rules, they do not rise to the level of an appeal that is completely without merit. Our affirmance of the judgment does not mean that mother's appeal was wholly without merit.

The minor candidly admits that one of the reasons for bringing the motion for sanctions is to deter future counsel from representing mother should she choose to pursue the litigation. A request for sanctions in one case should not be for the purpose of preventing the other party from retaining counsel in other matters.

32

C.

*The Minor's Motion for Judicial Notice (Evid. Code, § 452, subds. (c), (d)) and/or to Take Additional Evidence on Appeal (Code Civ. Proc., § 909)*

The minor asks this court to take judicial notice of a federal complaint filed by mother against father, the minor's former counsel, the SSA social workers, the Orange County Superior Court, former visitation monitors, and others, alleging, inter alia, violation of mother's and the minor's due process rights. As a record of a United States court, this is a matter of which this court may take judicial notice. (Evid. Code, § 452, subd. (d)(2).) We decline to take judicial notice of this complaint, however, because mother's separate pursuit of damages for alleged federal relief is not relevant to the issues raised on this appeal.

DISPOSITION

The judgment is affirmed. The minor to recover costs on appeal.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

RYLAARSDAM, J.